UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JAMAL WHITE, | ) |  |
|---|---|---|
| Plaintiff(s), | ) |  |
| vs. | ) | Case No. 4:18-cv-00518-SRC |
| CITY OF ST. LOUIS, et al., | ) |  |
| Defendant(s). | ) |  |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Daniel Isom's Motion to Dismiss Plaintiff's Complaint [124]. The Court grants the Motion.

**I.  BACKGROUND**

On April 6, 2018, Plaintiff Jamal White filed a complaint in this Court alleging Defendant Adam Feaman, a police officer with the St. Louis Metropolitan Police Department, used excessive force against White in violation of the Fourth and Fourteenth Amendments of the United States Constitution. White alleges Feaman struck White in his jaw and cranium with a flashlight. For a complete procedural history of the case, the Court refers to its Memorandum and Order, dated November 14, 2019, dismissing the claims against Feaman and Isom, in their official capacities, and the City of St. Louis. Doc. 131.

White brought his claims under 42 U.S.C. §1983 and asserted that the City has two policies and a custom that are the "moving force" behind the alleged unconstitutional conduct. He first alleged the two policies: (1) the "Normal" policy pursuant to which the City "normally" charges suspects on whom excessive force is used with resisting arrest in municipal court (rather than state court); and (2) the "Rec" policy under which municipal prosecutors will plea bargain

1

and "recommend" dismissal of municipal-court-resisting-arrest charges only if a defendant will sign a liability waiver releasing the City from any civil lawsuits. Doc. 62, ¶¶ 22-24. White then alleged St. Louis Metropolitan Police Department ("SLMPD") has a "custom" of "using unjustified force with impunity in any case that an offender runs, pulls away, or protest [sic]." Doc. 62, ¶ 55. White labeled the "custom" as "you run, you pay" ("YRYP"). Doc. 99. In dismissing the claims against the City and Feaman and Isom in their official capacities, the Court found White did not plausibly plead a pattern of misconduct and did not plead any facts from which the Court could infer a direct causal link between the Rec & Normal policies, the YRYP custom, and Feaman's conduct towards White. The remaining count against Isom is Count II for failure to train and supervise pursuant to 42 U.S.C. § 1983 in his individual capacity.

## II.     STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

### III. ALLEGATIONS IN THE COMPLAINT

Here, the Court summarizes all of White's allegations, factual and conclusory, to provide context to the Court's analysis below. The Court focuses on the allegations relevant to Isom.

White alleges, that on August 14, 2016, Feaman, a patrol officer, sought to place White under arrest. As White moved backward from Feaman, White questioned his impending arrest. Feaman struck White with his flashlight, cracking White's jaw, and again struck White in the cranium. According to White, as a result of Feaman's actions, White required extensive medical care, sustained significant injuries, and suffered severe emotional and psychological distress.

White alleges the excessive force Feaman used against him was the result of a widespread custom in the SLMPD of "you run, you pay" that was caused by the "Rec & Normal" policies. According to White, the "Rec & Normal" policies were created in 2012, when the SLMPD Chief of Police, Isom, updated a special order and trained officers to "normally" charge any resisting-arrest charge in municipal court rather than state court when the offender did not use force or threaten to use force, i.e. the "Normal" policy. White alleges the City also enforced a mandatory policy, called the "Rec Policy." In exchange for a city prosecutor's recommendation to dismiss a resisting-arrest charge in municipal court, the defendant signs a release of any civil liability that the City may have for use of excessive force against the defendant.

> The written "Normal" policy states, in part:
>
> Under normal circumstances, the defendant will be charged with a city ordinance violation of resisting arrest or interfering with an officer. The information application will be made at the City Counselor's Office.

The written "Rec" policy states, in part:

> Resisting arrest & Interfering [sic] with a Police Officer charges <u>cannot</u> be amended without first obtaining a signed release from the defendant (See Sample) (emphasis in original).

White alleges the Rec & Normal policies directly and indirectly motivate SLMPD officers to use excessive force or make false arrests with the protection of the City's municipal court. White claims this shield, "whether or not individually known to each SLMPD officer, was embedded in SLMPD training policies and practices."

White alleges SLMPD learned of the release policy because executed release agreements were regularly sent to the SLMPD once completed. The release form specifically states the releasor agrees not to sue the SLMPD for injuries sustained during his/her arrest. White claims that *but for* the blanket policy, the SLMPD could have investigated the underlying facts

4

precipitating the need for a release. Instead, the facts were ignored and the case considered closed because the SLMPD had an executed release agreement from the accused victim.

White alleges that, "Defendant Isom, as Chief of Police, simply exploits the City's Counselor's unconstitutional Rec policy to deliberately ignore police misconduct. Defendant Isom tacitly authorized the use of deadly force in non-threatening incidents as a result of the Defendants' Rec & Normal policies and practices." Defendants "created, promoted, and trained SLMPD to use tyrannical customs, tactics, patterns, and practices including": (a) deadly force to effectuate resisting-arrest violations with no threat to the officer's safety; (b) using unjustified force to effectuate municipal ordinance violations of resisting arrest; (c) concealing, obfuscating, and hiding civil rights violations by charging municipal resisting arrest or interference with a police officer; (d) using excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments; (e) unlawfully searching and seizing and charging violations of the municipal code; (f) tolerating, overlooking, and obfuscating police misconduct in incidents where the alleged offender runs, pulls away, or flees; (g) using deadly force when the offender does not present a threat but runs, pulls away, or protests his innocence; and (h) using excessive force as a means to punish, control, and deter accused victims.

White further alleges, "After creating the Rec & Normal policies and practices, Defendants could systemically ignore police misconduct. And, eventually this deliberate ignorance of the underlying police misconduct was the subject of the release provided to Defendant Isom. Defendant Isom's reliance on the City Counselor's Rec policy allowed and tacitly authorized officers to use excessive force with impunity on any individual that ran or protested, *e.g.* 'resisted.'"

**IV.     DISCUSSION**

In his Motion to Dismiss, Isom argues the Court should dismiss the claims against Isom in his individual capacity because White fails to allege facts that show Isom violated White's constitutional rights.  Isom further argues he is entitled to qualified immunity.  Because the Court finds qualified immunity applies to Isom, the Court only addresses the arguments regarding qualified immunity and does not address Isom's arguments regarding a failure to state a claim.

Section 1983 of Title 42 allows individuals to bring causes of action for violations of the U.S. Constitution.  The section states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  White asserts Isom violated the Fourth and Fourteenth Amendments of the Constitution, creating a cause of action under § 1983, by failing to train and supervise Feaman. To state a claim for supervisory liability under § 1983 for a failure to train or supervise, White must plead: (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury.  *Livers v. Shenck*, 700 F.3d 340, 355 (8th Cir. 2012).  A failure to train may serve as the basis for § 1983 liability where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Canton*, 489 U.S. at 388.  A court analyzes a claim for failure to supervise the same way it analyzes a claim for failure to train.  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Rogers v. King*, 885 F.3d 1118, 1121 (8th Cir. 2018). Qualified immunity protects government officials from liability under §1983 unless "(1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation." *Id*. Because a government official is only personally liable for his own misconduct, qualified immunity requires an individualized analysis of each officer's alleged conduct. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015); *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014). The Supreme Court instructed that courts can address either of the two prongs of the qualified immunity analysis first, based on the circumstances of the case at hand. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A supervising official, who has no direct participation in the alleged constitutional violation, is "entitled to qualified immunity unless [the] plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340. "Allegations of generalized notice are insufficient," and the other unconstitutional acts must be "very similar" to the conduct at issue in the present case. *Id*. Here, to survive Isom's motion to dismiss, White must allege that Isom had notice of a pattern of excessive use of force by officers against individuals who protested their arrests, and that he was deliberately indifferent to or authorized those acts.

The only allegations White includes regarding Isom's possible notice of unconstitutional acts are as follows:

45. SLMPD learned of the city prosecutor's blanket policy because the executed release agreements are regularly sent back to the SLMPD. In fact, an employee of the SLMPD legal division sent an email to a municipal prosecutor to ensure the municipal division was 'still taking releases.'

46. The Release form specifically states that the Releasor agrees not to sue the SLMPD for injuries sustained during his/her arrest. SLMPD knew and should have known that a pattern of excessive force was pervasive throughout the SLMPD based on the underlying facts and number of release agreements executed for the resisting arrest charge.

47. But for the Defendants' blanket policy and routine nature of delivering executed release agreements, the SLMPD could have investigated the underlying facts precipitating the need for a release. Instead, the Defendant ignored the underlying facts and considered the case closed simply because the SLMPD had an executed release agreement from the accused victim not to bring a claim against the SLMPD officer(s) involved in the arrest.

Doc. 62, ¶¶ 45-47.

None of these allegations, even when taken as true despite their conclusory nature, establish that Isom had notice of Feaman's, or other officers', use of excessive force against individuals who protest their arrests. At most, the allegations show that the *SLMPD* had generalized notice of release forms, but they do not show that *Isom* himself had notice. As stated in *Krigbaum*, allegations of generalized notice are insufficient. 808 F.3d at 340. Furthermore, the allegations do not make clear what notice the SLMPD received from the release forms and whether the release forms indicated that any officer, much less particular officers, used excessive force against individuals.

Finally, as the Court detailed in its Memorandum and Order, Doc. 131, White fails to sufficiently plead a custom, pattern, or practice of use of excessive force by SLMPD officers against individuals protesting their arrests because the allegations of other misconduct are not sufficiently similar to the allegations of misconduct here. White cannot plead Isom had notice of a pattern of unconstitutional misconduct when White failed to sufficiently plead a pattern of

unconstitutional misconduct.  For these reasons, Isom is entitled to qualified immunity and the Court dismisses Count II against Isom in his individual capacity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Daniel Isom's Motion to Dismiss Plaintiff's Complaint [124] is **GRANTED**.  All claims against Defendant Isom are **DISMISSED.**

So Ordered this 31st day of December, 2019.

*SLR.CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**